**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **JORDAN BAILEY, Y31943,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 25-cv-362-DWD** |
| | ) | |
| **CHAPLAIN LAMBERT-GOHEEN,** | ) | |
| **GALLOWAY,** | ) | |
| **KEVIN REHFUSS,** | ) | |
| **CARL W. HARMON,** | ) | |
| **ROB JEFFREYS,** | ) | |
| | ) | |
| **Defendants.** | ) | |

# MEMORANDUM AND ORDER

**DUGAN, District Judge:**

On March 18, 2025, this matter was severed from a multi-plaintiff action concerning multiple inmates' ability to observe their religion at Shawnee Correctional Center. *See Clair et al. v. Lambert-Goheen, et al.*, Case No. 25-cv-82-DWD. The Plaintiffs allege that from the third quarter of 2022 through January of 2023 they experienced hinderances with their ability to observe their religion at Shawnee. They further claim that after gathering for a Jumu'ah service in Shawnee's chapel on January 20, 2023, they became the targets of retaliatory transfers to Menard, and retaliatory discipline. In the above-captioned case, Plaintiff Jordan Bailey was allowed to proceed on five claims against the Defendants alleging Equal Protection violations, hinderances on his ability to observe his religion, and alleged retaliation. Defendants have moved for summary

judgment on the issue of exhaustion (Doc. 47), and Plaintiff has responded (Doc. 53). For reasons explained herein, the Defendants' motion is granted in part and denied in part.

**Background**

Plaintiffs alleged that in the third quarter of 2022 when religious services in IDOC returned to a more normal level after the Covid-19 pandemic, the Al-Islam followers were not afforded the same opportunities to observe their religion as other groups. Previously, the group had weekly hour-long Taleem and Jumu'ah services, but after the pandemic, they were limited just to the Jumu'ah services. They claim that Lambert-Goheen allowed other religious groups to go back to full operations, and that she assisted other groups in things like recruiting outside volunteers to come in to deliver religious messages. They also allege that Defendant Lambert-Goheen ensured that other religions received appropriate meals for their religious dietary needs during special holidays, but she made sure to be out of the office or otherwise failed to supervise dietary services for special occasions such as Ramadan or Eid-Al-Fitr. They claim Defendant Galloway knew of this from multiple missives but failed to do anything about it and thus participated in the discriminatory treatment. (Doc. 1 at 13).

Plaintiffs allege that Jumu'ah services were subject to such stringent restrictions that the services were essentially rendered ineffective as a form of observing the religion. While other religions had outside volunteers that came to the prison to lead worship, the Al-Islam members were not allowed an outside volunteer. On many occasions, this meant that the Al-Islam inmates were left with a short 15–20-minute video for Jumu'ah, while other religions enjoyed an hour-long service. On a handful of occasions, Lambert-

Goheen allowed inmates to consult on the contents of longer Jumu'ah gatherings, and they were allowed to deliver pre-approved and strictly scripted messages themselves. However, Lambert-Goheen hindered this effort by attempting to insist that inmate Clair and a fellow-inmate needed to recruit other followers of the religion to deliver Jumu'ah messages so that fellow inmates would not come to regard the two as religious leaders. The two tried to explain that this would not be religiously appropriate because teachings should only be delivered by those highly knowledgeable in the Quran, but Lambert-Goheen remained steadfast. In mid-January of 2023, she promised to allow Clair to deliver the service, but she swapped it out for the 20-minute video at the last minute. Plaintiff faults Lambert-Goheen and Defendant Warden Galloway for making these policies. (Doc. 1 at 16).

The plaintiffs alleged that on January 20, 2023, inmates went to the chapel expecting to participate in a Jumu'ah service that Clair was to lead by delivering a pre-approved speech. The speech had been delayed the previous week without warning, and the Jumu'ah gathering on this day was delayed because Lambert-Goheen took time to escort a volunteer religious leader for another religion out of the prison. While the inmates were waiting, they discussed filing grievances about the unfair treatment of their religion. When Lambert-Goheen arrived, she prepared the television for a video and indicated to the inmates that she would be playing a video instead of having Clair speak because she could not allow one inmate to become a leader of others. Prior to playing the video, she initiated a Q&A session, as was typical. Many hands were raised, and she indicated they would proceed as long as everyone maintained proper manners and

decorum. Individuals asked a variety of questions about why Clair could not always lead services, or why they could not get an outside volunteer Imam to lead services, which Lambert-Goheen largely brushed off. When individuals began to press about names of those in the Administration responsible for religious decisions so that they could file grievances, the tone changed. Lambert-Goheen threatened to cancel the services entirely. Clair then raised his hand and asked if she would really cancel services simply because they were asking calm and valid questions about their services. Rather than responding, Lambert-Goheen gave a single order for everyone to get out of the chapel and she immediately began to collect prayer rugs.

The plaintiffs alleged that the inmates exited in an orderly fashion. Inmates returned to their cells, and later that afternoon an officer came to Clair's cell and told him to pack his property to move to restrictive housing. Clair alleges he was never given an investigative ticket, nor was he told directly why he was put in restrictive housing. Clair alleges he eventually realized that all of the individuals taken to restrictive housing were those who had previously filed grievances against Lambert-Goheen and who had been seen on camera speaking to him. He was placed in restrictive housing on a Friday, and he alleges that by the following Tuesday all inmates implicated had been transferred to other facilities. Plaintiff Bailey alleged the same series of events, and indicated that during the January 20, 2023, service at the chapel he never said anything to anyone.

Bailey and his former co-plaintiffs were all transferred to Menard, a maximum-security facility. At Menard they each received an identical disciplinary ticket that charged them with disobeying direct orders essential to safety and security, or a lesser

offense of insolence. (Doc. 1 at 20). The tickets were premised on information from confidential sources, and alleged they had disrupted services on January 20, 2023, and had been aggressive with the chaplain. Clair alleges that the disciplinary ticket and use of confidential informants was intentional because Lambert-Goheen is "very calculated" in her actions. He alleges the discipline was retaliatory. Clair faults Defendants Jeffreys (former director of IDOC) and Warden Galloway for quickly signing off on inmate transfers without doing an investigation. He further alleges Jeffreys, Galloway, Lambert-Goheen, John Doe 2 (shift supervisor who signed the disciplinary report), Major Hillie, Lt. Bradford, and Carl Harmon all violated the plaintiffs' rights to due process and punished them for attempting to exercise their religion. (Doc. 1 at 21).

Bailey and Wilson allege they requested witnesses and video footage for the disciplinary hearing. A hearing was held for Clair on February 1, 2023, at which time he was asked if he needed a continuance to get statements from his witnesses. Defendant Schoenbeck insisted he did not, and then Clair proceeded to give a verbal account of events, which he claims Schoenbeck heavily interrupted. Clair spoke on the nature of the offenses alleged, as well as his own account of what transpired at the Shawnee chapel. Clair was ultimately found guilty and received a month of C-grade and 28 days of segregation. He claims that co-plaintiffs Wilson and Bailey's hearings went similarly, despite other individuals who faced the same disciplinary report having their offenses expunged. Plaintiff Clair tried to grieve the disciplinary outcome via two channels, and Defendants Bayler and Jeffreys refused to investigate further, however, he alleges that they did direct Warden Wills to downgrade one of the charges to a lesser offense. He

claims that based on these events his Due Process rights were violated by Defendants Schoenbeck, Jones, Wills, Bayler and Jeffreys.

Based on the allegations in the Complaint, the Court designated the following claims:

**Claim 1:** **Equal Protection claim against Defendant Lambert-Goheen for affording Al-Islam observers a single 20–30-minute Jumu'ah service once a week and for completely discontinuing Taleem weekly educational gatherings, while other religions were afforded hour-long gatherings from late-2022 onward;**

**Claim 2:** **Equal protection claim against Defendant Lambert-Goheen for failing to ensure adequate dietary accommodations for Ramadan, Eid-Al-Fitr, and Eid-Al-Adha, despite ensuring adequate dietary accommodations for religious holidays of other religions such as Christmas or Passover.**

**Claim 3:** **First Amendment claim against Defendant Lambert-Goheen for strictly limiting the content of the Khutbah (sermon/speech) in late-December of 2022-January of 2023, and/or for replacing the Khutbah with short video presentations;**

**Claim 4:** **First Amendment retaliatory transfer claim against Defendants Warden Galloway and Director Jeffreys for allegedly quickly signing off on immediate transfers after the January 20, 2023, chapel incident allegedly without conducting any investigation;**

**Claim 5:** **First Amendment retaliatory discipline claim against Defendants Lambert-Goheen, C/O Harmon (officer who reported the January 20, 2023, incident for discipline), Kevin Rehfuss (supervisor who signed off on the disciplinary report) for "acting in cohesion" to retaliate against Plaintiffs for using the grievance process regarding Al-Islam religious practice.**

Following initial discovery, Defendants moved for summary judgment and Plaintiff has responded.

**Findings of Fact**

The parties agree that grievances 310-2-23 and 339-2-23 are both relevant. Bailey filed Grievance 310-2-23 on February 11, 2023, concerning the January 20, 2023, Jumu'ah service. (Doc. 47-1 at 5). In the grievance he alleges that as inmates began to congregate in the chapel, Lambert-Goheen was fielding questions and discussing religious matters with inmates. (*Id.*). During this exchange, Lambert-Goheen indicated that the day's service could not be led by an inmate because her superiors said prayer cannot be led by a single person regularly. (*Id.* at 5-6). After a few inmate queries, Lambert-Goheen indicated the inmates could either watch a video service or end chapel. (*Id.* at 6). A follow-up question prompted her to end chapel, and she directed the inmates to leave. (*Id.*). Bailey left the chapel despite missing one of his five daily prayers dictated by his Muslim religion. (*Id.*). Bailey alleges that on January 23, 2023, he was told to pack his belongings because he was being placed in segregation under investigation. On January 24, 2023, Bailey was transferred from Shawnee to Menard, and on January 27 he received a disciplinary ticket alleging multiple offenses related from chapel on January 20. (*Id.*). Bailey alleged the disciplinary report was "completely fabricated and baseless." (*Id.*). He further alleges that the conditions in restrictive housing were harsh and exacerbated physical and mental health issues. Bailey also complained that the transfer to Menard interrupted a transfer request he had pending to relocate closer to family in Danville. (*Id.* at 8).

The grievance officer recommended that the grievance be denied and the discipline be upheld. (Doc. 47-1 at 3). In reaching this recommendation, the grievance

officer reviewed disciplinary documents, indicated the discipline conformed with internal prison procedures, and indicated Bailey was allowed to make a statement on his behalf at the hearing. (*Id*. at 3-4). The Warden concurred on April 14, 2023, and Plaintiff signed the form to appeal on April 23, 2023. (*Id.* at 4). The Administrative Review Board (ARB) stamped the grievance as received on May 15, 2023, and thus procedurally rejected it as received more than 30 days after the Warden's decision. (*Id.* at 2).

Bailey filed grievance 339-2-23 on February 17, 2023, also concerning the disciplinary report. (Doc. 47-1 at 13). Bailey again alleges the disciplinary report was "completely fabricated" and he attacks the plausibility of the events recounted in the report. (*Id.* at 13-15). Specifically, he alleges it was signed three days after the incident, and is based off of confidential source information when there were multiple staff members present who could have provided non-confidential information. (*Id.* at 14). Bailey alleges the adjustment committee who heard the ticket failed to investigate and could have called his witnesses or reviewed camera footage. Bailey further alleges the ticket is flawed because it matched the tickets for others verbatim. (*Id.* at 15-16).

The grievance officer recommended denying the grievance on the premise that the discipline was already reviewed with grievance 310-2-23. (*Id.* at 12). The Warden concurred on April 14, 2023, and Plaintiff signed his appeal on April 23, 2023. (*Id.*). The ARB rejected the appeal as untimely received on May 15, 2023. (*Id.* at 11).

The grievance documents tendered by the parties referenced a third grievance filed as an emergency, grievance 385-1-23, but neither side provided a copy of this grievance. It appears based on the contents of grievance 339-2-23 that after grievance 385-

1-23 was denied emergency status, Bailey filed an entirely new grievance 339-2-23 via the normal grievance process.

Grievance officer Jeffrey Olson declared that Plaintiff filed two grievances at Menard from January to May of 2023, though he gives grievance numbers for three grievances (385-1-23, 310-2-23, 339-2-23). (Olson Decl., Doc. 47-3 at ¶ 9). Plaintiff attests via signed declaration that on or about April 23, 2023, he appealed grievances 310-2-23 and 339-2-23 to the ARB by placing the appeals in the custody of an officer. (Bailey Decl., Doc. 53 at 32 ¶ 2). Bailey also attested that on January 21, 2023, he tendered a grievance at Shawnee about the denial of Jumu'ah, Taleem, and religious meals. (*Id.* at ¶ 3). He alleges he filed this grievance by giving it to Sgt. Sams, which was common practice at Shawnee. (*Id.* at ¶¶ 4-5). He further attests that he made a copy for himself, which he attached as an exhibit to his response. (*Id.* at ¶ 6, Doc. 53 at 24). The grievance purports to be submitted on January 21, 2023. The first page indicates that on January 20, 2023, Bailey had been denied Jumu'ah for several weeks, and on that day he was informed inmates would only be afforded a 30 minute video. (Doc. 53 at 24). As relief, Bailey sought fairness amongst religions and the ability to practice his faith and beliefs and to attend services. (*Id.*). Though a box is checked indicating the grievance narrative continued on additional pages, only the first page is appended to Bailey's response.

## CONCLUSIONS OF LAW

### A. Legal Standards

Summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In

determining a summary judgment motion, the Court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted). Courts generally cannot resolve factual disputes on a motion for summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014) ("[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted). However, when the motion for summary judgment pertains to a prisoner's failure to exhaust administrative remedies, the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to exhaust. *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008).[1] After hearing evidence, finding facts, and determining credibility, the court must decide whether to allow the claim to proceed or to dismiss it for failure to exhaust. *Wilborn v. Ealey*, 881 F.3d 998, 1004 (7th Cir. 2018). The court is not required to conduct an evidentiary hearing if there is no genuine dispute of material fact, and the determination is purely legal. *See e.g.*, *Walker v. Harris*, 2021 WL 3287832 * 1 (S.D. Ill 2021); *Miller v. Wexford Health Source, Inc.*, 2017 WL 951399 *2 (S.D. Ill. 2017).

---

[1] The Supreme Court's recent opinion in *Perttu v. Richards*, 605 U.S. 460 (2025), held that if the facts necessary for a ruling on exhaustion are intertwined with the merits of the claim, a jury trial is required. But the *Perttu* Court did not go so far as to extend the Seventh Amendment right to a jury trial to all exhaustion disputes. Plaintiff argues that there is intertwinement in this case simply because he has claims proceeding premised on retaliation, but Plaintiff's claims are not intertwined in the way contemplated in *Perttu*. Intertwinement exists when the facts needed to resolve the exhaustion dispute overlap with the facts that will ultimately weigh on the merits of the substantive claims. Here, Plaintiff has not alleged that any of the named defendants confiscated or destroyed his grievances, as the plaintiff had in *Perttu*, so the factual issues to be resolved concerning exhaustion are not intertwined with the merits of his First Amendment claims, and the exhaustion issue does not need to be deferred to trial.

The Prison Litigation Reform Act (PLRA) provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey*, 544 F.3d at 740. "The exhaustion requirement is an affirmative defense, which the defendants bear the burden of proving." *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011). For a prisoner to properly exhaust his administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Id.* at 1024.

As an inmate in the IDOC, Plaintiff was required to follow the grievance process outlined in the Illinois Administrative Code. 20 ILL. ADMIN. CODE § 504.800, et seq. (2017). Section 504.810(c) requires that a grievance state: "what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible." An inmate may request that a grievance be handled as an emergency by forwarding it directly to the CAO. 20 ILL. ADMIN. CODE § 504.840. If it is determined that there exists a substantial risk of imminent personal injury or other serious or irreparable harm, the grievance is handled on an emergency basis, which allows for expedited processing of the grievance. *Id.*

If the inmate is not satisfied with the CAO's response, he can file an appeal with the IDOC Director through the Administrative Review Board (ARB). 20 ILL. ADMIN. CODE

§ 504.850(a). The ARB must receive the appeal within 30 days of the date of the CAO's decision. *Id.* The inmate must attach copies of the responses from the grievance officer and CAO to his appeal. *Id.*

**B. Analysis**

Defendants argue that Plaintiff knew of the grievance process, had access to it, and successfully filed appeals. (Doc. 47 at 5-6). They contend that Claims 1 and 2 alleging equal protection violations by Defendant Lambert-Goheen were never grieved. (*Id.* at 6-7). Plaintiff counters via a signed declaration, and an exhibit, that he submitted a grievance at Shawnee on January 21, 2023, concerning equal treatment of religions for services and a religious diet. (Doc. 53 at 24, Bailey Decl., Doc. 53 at 31 ¶¶2-6). Though the exhibit that purports to be a copy of the January 21, 2023, grievance appears to be missing pages, the contents on the first page suggest that the grievance is about different religions being treated differently in relation to services and dietary needs. (Doc. 53 at 24). The excerpt, coupled with Plaintiff's declaration, is enough to create a genuine dispute of fact about Plaintiff's exhaustion concerning Claims 1 and 2.

Next, Defendants argue that grievances 310-2-23 and 339-2-23 are not sufficient for exhaustion under the PLRA because they are procedurally defective and were rejected as untimely by the ARB. (Doc. 47 at 6). Plaintiff counters that the prison mailbox rule should apply, he tendered his grievances well in advance of the 30-day deadline, and thus the ARB was wrong to reject them as untimely. Plaintiff supports this line of argumentation with a sworn statement in his declaration that he gave his appeals to a prison employee for transmission on or about April 23, 2023. (Bailey Decl., Doc. 53 at 31 ¶ 1).

In *Dole v. Chandler*, an inmate gave a grievance appeal to an officer for transmission to the ARB, and the grievance never arrived for processing by the ARB. *Dole v. Chandler*, 438 F.3d 804 (7th Cir. 2006). The Seventh Circuit reasoned that the inmate did all he could once he gave the appeal to the officer because he had no control over the time or means through which the appeal was transmitted, and he had no notice or opportunity to remedy the issue. *Id.* at 810-11. Although the Seventh Circuit has not explicitly endorsed the applicability of the prison mailbox rule to the PLRA exhaustion context, many courts in this circuit have applied the prison mailbox rule in this context. *See e.g.*, *Warren v. Jeffreys, et al.*, 2023 WL 6605433 at * 6 (S.D. Ill. Oct. 10, 2023) (collecting cases for the proposition that per the prison mailbox rule, a grievance is filed when the prisoner places it in the mail); *Taylor v. Brown*, 787 F.3d 851, 858-59 (7th Cir. 2015) (federal courts generally apply the prison mailbox rule which provides that an inmate's document is "filed" at the moment the inmate places it in the prison mail system). Here, the Court agrees with Plaintiff's position, when an inmate tenders a grievance appeal to staff for transmission to the ARB, the appeal should be considered timely if it is given to staff on time. Therefore, the Court treats grievances 310-2-23 and 339-2-23 as timely appealed.

Next, the Court must consider which claims might be exhausted by grievances 310-2-23 and 339-2-23. Defendants argue that the grievances do not mention Defendants Harmon, Rehfuss, or Galloway[2] by name, so the grievances cannot exhaust the claims

[2] Though the attorney general's office entered an appearance for Defendant Jeffreys (Doc. 15), the Defendants' summary judgment motion (Doc. 47) does not make any argument about Jeffreys. The Court assumes this to be a scrivener's error. Arguments applicable to Galloway would clearly apply with the same force to Jeffreys, so the Court will consider both defendants for any argument presented on behalf of Galloway.

against them. (Doc. 47 at 7). Plaintiff argues that failing to name a defendant in a grievance is a mere technical defect if the unnamed individual's wrongdoing is sufficiently described for the prison to take action. (Doc. 53 at 10). In support of this proposition, Plaintiff cites *Lindsey v. McClanahan*, Case No. 24-cv-2290 (S.D. Ill. p. 7).[3]

Though the Seventh Circuit does not maintain a firm requirement that a grievance name all defendants, it has held that the PLRA requires a grievance to at least contain enough information for the prison to address the merits of an issue later presented in a lawsuit. *Compare Maddox v. Love,* 655 F.3d 709, 721-22 (7th Cir. 2011) *with Schillinger v. Kiley, et al.*, 954 F.3d 990 (7th Cir. 2020). In *Maddox v. Love*, the Seventh Circuit found that an inmate's grievance clearly complaining of issues accessing religious services was sufficient to exhaust a claim against a prison warden and chaplain where both individuals participated in the resolution of the grievance and the grievance was addressed at all levels of review on the merits. 655 F.3d 709, 721-22. By contrast, in *Schillinger,* the court found that an inmate's grievance about a failure to protect that did not name several officers and only discussed staff conduct *during* and *after* an attack was not sufficient to exhaust a failure to protect claim centered on what the defendants knew *before* the attack. The *Schillinger* Court emphasized that at minimum, a grievance must provide the prison with notice of the nature of the wrong for which redress is sought, and it must give the

[3] Finding that a grievance complaining about bugs in food, that did not name Defendant McClanahan, was sufficient to exhaust an Eighth Amendment claim against McClanahan because he participated in responding to the grievance and was identified in the grievance response as an officer who was aware of the bug issue and provided new food trays. *Lindsey v. McClanahan*, 2025 WL 3492752 at * 4-5 (S.D. Ill. Dec. 5, 2025). The Court reasoned that the grievance obviously served its purpose by alerting the prison to the issue with the food and gave the prison ample chance to respond.

prison's administrative authority an opportunity to correct mistakes prior to litigation. 954 F.3d 990, 995-96.

There are many cases finding grievances adequate even where the grievance does not name prison employees. *See e.g.*, *Glick v. Walker*, 385 Fed. App'x 579, 582-83 (7th Cir. 2010) (finding that two grievances that clearly described issues without employee names, and that were substantively assessed at each level of the grievance process, were sufficient for exhaustion because the PLRA does not have a strict "name all defendants" mandate); *Williams v. Luking*, 2023 WL 317663 at * 5 (S.D. Ill. Jan. 19, 2023) (finding that an inmate's grievance that reasonably described deficient medical care, included a consultation of relevant medical professionals in the response process, and was exhausted at all levels, was sufficient for exhaustion even if it did not contain the names of prison officials). But there are also a growing body of cases that find grievances about a broad issue insufficient to exhaust discrete claims later brought against employees who are not identified in the underlying grievance. *See e.g.*, *Olden v. Jackson,* 2024 WL 4601042 at *4 (Oct. 29, 2024) (unpublished panel decision) (finding that a grievance with a passing mention of "telepsyci" was insufficient to exhaust a claim against a psychiatrist who was one of four at the prison where the grievance did not detail when the inmate interacted with the psychiatrist and did not say anything that would help the prison know which psychiatrist was allegedly responsible for a misdeed); *King v. Dart*, 63 F.4th 602, 608 (7th Cir. 2023) (finding that a grievance about medical care with a generic reference to correctional staff who sent an inmate for medical care the day after an attack was not sufficient to exhaust a claim against an officer who allegedly had involvement with the

inmate the day of the attack); *Bowers v. Dart*, 1 F.4th 513, 517-18 (7th Cir. 2021) (finding that a grievance that alleged an officer ignored an inmate *during* an attack was not aligned with later allegations in litigation that several officers knew of the risk of an attack *before* the attack occurred).

First, the Court will consider if grievance 310-2-23 contained sufficient allegations to alert the prison to an issue, and if that issue aligns with Claims 3-5 of this lawsuit. (Doc. 47-1 at 5-8). In grievance 310-2-23, Bailey indicates that a disturbance occurred at the chapel on January 20, 2023. Specifically, he alleged in the grievance that when he arrived at chapel, Lambert-Goheen explained to inmates that they could not conduct the service in their preferred fashion, and she eventually offered a video as the only option for service that day. (Doc. 47-1 at 5-6). He maintains that he said nothing during the verbal exchange between others and the chaplain and he peacefully and silently exited. (*Id.* at 6). Bailey alleges that three days later he was moved to restrictive housing for an investigation of the disturbance, and a day after that he was transferred to Menard's maximum security restrictive housing. He goes on to complain about a few specific conditions at Menard, and alleges that the disciplinary ticket he received was "completely fabricated and baseless." (*Id.* at 6).

In the complaint, and in Claim 3 as designated by the Court, Bailey alleged that Lambert-Goheen was strictly limiting the contents of religious services or only offering short video presentations, in violation of the First Amendment. The contents of grievance 310-2-23 are sufficient to exhaust this claim. The grievance discusses Lambert-Goheen's conduct, mentioning her by name, and describing the way she controlled the contents of

a religious service. Plaintiff alleged in the complaint and in the grievance that this caused him to miss his ability to properly observe his religion. Thus, Claim 3 is properly exhausted.

In the complaint, and in Claim 4 as designated by the Court, Bailey alleged that Galloway and Jeffreys quickly signed off on the transfer without investigating as an act of retaliation. Neither Galloway or Jeffreys was named in the grievance, so the question is whether the substance of the grievance was enough to alert prison officials that Bailey believed the transfer was retaliatory. Though the transfer is mentioned as a fact in the series of events surrounding the January 20 chapel incident, the transfer is certainly not the focus of the grievance, and nothing about the grievance suggests that Bailey was trying to alert prison officials that the transfer in and of itself retaliatory or improper. Thus, the Court concludes that the substance of grievance 310-2-23 was not sufficient to alert the prison to a potential future retaliatory transfer claim against Galloway or Jeffreys and the claim is not exhausted.

In the complaint, and in Claim 5 as designated by the Court, Bailey alleged that Lambert-Goheen, Harmon, and Rehfuss engaged in retaliatory discipline when they participated in the issuance of the disciplinary ticket issued in relation to the January 20, 2023, chapel incident. Neither Harmon nor Rehfuss are named in grievance 310-2-23. The grievance does not contain any allegations by Bailey that he personally engaged in protected speech, either at the chapel or via the grievance procedure before he got the disciplinary ticket. While the grievance complains that the ticket was "completely fabricated and baseless," it does not allege that there was a specific retaliatory motive to

the ticket. Though the grievance mentions Lambert-Goheen's actions in the chapel, it does not mention her involvement in the disciplinary ticket, and it also does not say anything that would cause the reader to think of Harmon or Rehfuss—officials who allegedly prepared and signed off on the ticket. At most, the grievance says the ticket was signed on January 23, 2023, rather than on January 20, 2023, when it was authored, but this alone does not suggest retaliation or ill-will as opposed to a slow bureaucratic process. On the whole, the Court does not read grievance 310-2-23 as asking the prison to address and remedy *retaliatory* conduct. The grievance expresses dissatisfaction and disbelief with the discipline, but it does not tell the prison three bad actors issued the ticket for retaliatory reasons. As such, the grievance is not sufficient to exhaust Claim 5 against Lambert-Goheen, Harmon, or Rehfuss.

Additionally, the Court considered whether grievance 339-2-23 was sufficient to exhaust claims 4 or 5. Grievance 339-2-23 focused on the disciplinary report that Bailey received on January 23, 2023. (Doc. 47-1 at 13-16). Bailey alleges two lieutenants told him to pack up for restrictive housing on January 23 and on January 24 he was transferred to Menard. He claims he eventually learned he was never under investigation and he goes on to attack the plausibility of the contents of the disciplinary report. (*Id.* at 14). Bailey argues that his alleged behavior was a mismatch for some of the charges in the ticket, that the confidential informants were not reliable, and that the ticket violated provisions of the prison's administrative code, among other things. (*Id.*). Bailey also alleges that the disciplinary committee who reviewed the ticket at Menard was not impartial and they failed to investigate. (*Id.* at 16).

As with grievance 310-2-23, grievance 339-2-23 mentions the fact that Bailey was transferred in passing, but it does not say anything about Galloway or Jeffreys' involvement and it does not suggest the transfer was retaliatory. Thus, the grievance does not exhaust Claim 4. The same goes for Claim 5. While the grievance challenges the discipline at length, it says nothing that points to Harmon or Rehfuss. It also does not say anything suggesting Lambert-Goheen participated in any retaliatory capacity. One of the pillars of a retaliation claims is an assertion that the plaintiff engaged in protected speech, but grievance 339-2-23 does not say anything tending to suggest Bailey engaged in protected speech prior to the chapel incident or the subsequent disciplinary ticket. As such, grievance 339-2-23 is also insufficient to exhaust Claim 5.

In sum, Claim 3 against Defendant Lambert-Goheen is properly exhausted by grievance 310-2-23. There is a genuine dispute of material fact about if Bailey submitted a grievance on January 21, 2023, that could exhaust the equal protection theories in Claims 1 and 2 against Defendant Lambert-Goheen. By contrast, Claims 4 and 5 are not exhausted concerning Defendants Galloway, Jeffreys, Harmon, Rehfuss and Lambert-Goheen. Given that no claims survive concerning Galloway, Jeffreys, Harmon, or Rehfuss, these four defendants will be terminated. Defendant Lambert-Goheen shall have 14 days to request an evidentiary hearing concerning Claims 1 and 2 and the dispute about if Bailey submitted a grievance on January 21, 2023, as he alleges. If Lambert-Goheen does not request a hearing, Claims 1-3 will advance solely against her.

**Disposition**

**IT IS HEREBY ORDERED THAT** The Defendants' Motion for an Extension (Doc. 46) is **GRANTED** instanter, and the Defendants' for Summary Judgment (Doc. 47) is **GRANTED in part, and DENIED in part**. The Motion is **GRANTED** as to **Claims 4 and 5**, which have not been exhausted for reasons explained in this Order. The Clerk of Court shall **TERMINATE** Defendants Galloway, Jeffreys, Harmon, and Rehfuss, because they were only named in Claims 4 and 5.

The Motion (Doc. 47) is **DENIED** as to Claims 1 and 2, but for these claims there is a genuine dispute of material fact, so Defendant Lambert-Goheen shall have 14 days to file a Notice either withdrawing the affirmative defense of failure to exhaust or requesting a *Pavey* hearing. The *Pavey* hearing shall be limited to the issue of whether Bailey tendered a grievance on January 21, 2023, as suggested by exhibit C. (Doc. 53 at 24).

The Motion is **DENIED** as to Claim 3 against Defendant Lambert-Goheen because grievance 310-2-23 was sufficient to exhaust this claim. A *Pavey* hearing may *not* be sought on Claim 3, and Claim 3 shall advance to merits discovery.

Plaintiff's Motion for Status (Doc. 54) is **GRANTED** by the issuance of this Order. Next steps will depend on Defendant Lambert-Goheen's decision to either request an evidentiary hearing or to withdraw the affirmative defense on Claims 1 and 2.

**IT IS SO ORDERED.**

Dated: August 14, 2026

Judge Dugan

Digitally signed by Judge Dugan
Date: 2026.08.14 13:57:05 -05'00'

DAVID W. DUGAN
United States District Judge

## NOTICE TO PLAINTIFF

This Order is an initial decision that you have presented enough evidence to refute the defendant(s) arguments about the exhaustion of administrative remedies for your claims in this lawsuit. The defendant(s) now have the choice to withdraw their exhaustion argument, or to ask for a hearing to give more evidence about this issue. If the defendants withdraw the defense, you will get a scheduling order for next steps on the merits of your claims. If the defendants ask for a hearing, you will get an order that will explain next steps to prepare for the hearing. Any hearing will be limited strictly to the 'dispute(s) of material fact' specifically identified in this Order. You will not need to present evidence on anything other than what is specifically identified. If a hearing is scheduled, you will be allowed to present evidence and testimony on your own behalf. Details about a future hearing will be provided by future order if one is scheduled. You do not need to do anything now. The Defendants have 14 days to file a motion about what they want to do. You will get a copy of that motion, and you will get further instructions once the Defendants have filed their motion. Please be aware that there can be delays in the mailing of copies, so you should wait at least 30 days before asking for the status of this matter.