**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **JORDAN BAILEY, Y31943,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 25-cv-362-DWD** |
| | ) | |
| **CHAPLAIN LAMBERT-GOHEEN,** | ) | |
| | ) | |
| **Defendant.** | ) | |

# MEMORANDUM AND ORDER

**DUGAN, District Judge:**

This matter comes before the Court following a *Pavey* evidentiary hearing concerning Plaintiff's allegation that he submitted a grievance at Shawnee Correctional Center. For reasons explained herein, the Court finds that Plaintiff did not adequately exhaust the grievance he alleges he submitted on January 21, 2023, so Claims 1 and 2 are now subject to dismissal without prejudice for Plaintiff's failure to exhaust administrative remedies.

## BACKGROUND

This case originated as a multi-plaintiff action and was severed in March of 2025 when it became apparent that one plaintiff had several unique claims, and the exhaustion analysis would differ for all three plaintiffs. *See Clair et al. v. Lambert-Goheen, et al.*, Case No. 25-cv-82-DWD (S.D. Ill. Mar. 17, 2025) (docket entry 16). A more comprehensive overview of the operative claims in this severed case and the exhaustion issues can be found in the Court's prior orders. (Docs. 1, 55). Relevant to the *Pavey* hearing, in the

complaint plaintiffs alleged that in the third quarter of 2022 when religious services in IDOC returned to a more normal level after the Covid-19 pandemic, the Al-Islam followers were not afforded the same opportunities to observe their religion as other groups. Previously, the group had weekly hour-long Taleem and Jumu'ah services, but after the pandemic, they were limited just to the Jumu'ah services. They claim that Lambert-Goheen allowed other religious groups to go back to full operations, and that she assisted other groups in things like recruiting outside volunteers to come in to deliver religious messages. They also allege that Defendant Lambert-Goheen ensured that other religions received appropriate meals for their religious dietary needs during special holidays, but she made sure to be out of the office or otherwise failed to supervise dietary services for special occasions such as Ramadan or Eid-Al-Fitr.

Based on the allegations in the Complaint, the Court designated the following claims:

**Claim 1:** **Equal Protection claim against Defendant Lambert-Goheen for affording Al-Islam observers a single 20–30-minute Jumu'ah service once a week and for completely discontinuing Taleem weekly educational gatherings, while other religions were afforded hour-long gatherings from late-2022 onward;**

**Claim 2:** **Equal protection claim against Defendant Lambert-Goheen for failing to ensure adequate dietary accommodations for Ramadan, Eid-Al-Fitr, and Eid-Al-Adha, despite ensuring adequate dietary accommodations for religious holidays of other religions such as Christmas or Passover.**

**Claim 3:** **First Amendment claim against Defendant Lambert-Goheen for strictly limiting the content of the Khutbah (sermon/speech) in late-December of 2022-January of 2023,**

**and/or for replacing the Khutbah with short video presentations;**

(Doc. 1). Upon review of the written briefs concerning the exhaustion of administrative remedies, the Court concluded that Claim 3 was properly exhausted against Defendant Lambert-Goheen, and it dismissed Claims 4 and 5 as unexhausted. (Doc. 55). Defendant requested an evidentiary hearing to address the sole outstanding issue—whether Plaintiff submitted a grievance on January 21, 2023, as he alleged in his response to summary judgment.

## FINDINGS OF FACT

Bailey attested in response to summary judgment that on January 21, 2023, he tendered a grievance at Shawnee about the denial of Jumu'ah, Taleem, and religious meals. (*Id.* at ¶ 3). He alleges he filed this grievance by giving it to Sgt. Sams, which was common practice at Shawnee. (*Id.* at ¶¶ 4-5). He further attests that he made a copy for himself, which he attached as an exhibit to his response. (*Id.* at ¶ 6, Doc. 53 at 24). The grievance purports to be submitted on January 21, 2023. The first page indicates that on January 20, 2023, Bailey had been denied Jumu'ah for several weeks, and on that day he was informed inmates would only be afforded a 30 minute video. (Doc. 53 at 24). As relief, Bailey sought fairness amongst religions and the ability to practice his faith and beliefs and to attend services. (*Id.*). Though a box is checked indicating the grievance narrative continued on additional pages, only the first page is appended to Bailey's response.

At the *Pavey* hearing, defense counsel called Plaintiff Bailey as the first witness. Bailey testified that on January 21, 2023, he was living in the 2 house, D wing, cell 65 at Shawnee. He alleges that there was a locked grievance box in the corridor that inmates could access when exiting the housing unit. At other times, inmates had to ask an officer to let them access the grievance box, or they had to rely on an officer to place a grievance in the box on their behalf. Plaintiff testified that he assumed officers were willing to deposit a grievance for inmates in the box. He also testified that he believed he handed his grievance to Sergeant Sams. He said he would not necessarily describe himself as having a trusting relationship with Sams, but he spoke with Sams most often out of the correctional staff working his unit and he had a rapport with Sams.

Plaintiff testified that when he prepared his January 21, 2023, grievance, he made a duplicate copy for himself because he had heard from other inmates that the grievances at Shawnee sometimes went missing. He prepared the two grievances simultaneously and wrote on the front and back of them. Plaintiff believed his summary judgment response contained the front and back side of the January 21, 2023, grievance. Plaintiff also testified that this was the first grievance he had filed in the IDOC since his incarceration commenced in 2018. He indicated that he filed several subsequent grievances at Menard that got responses. He did not do anything to follow up on the status of the January 21, 2023, grievance. Plaintiff conceded that he did not mention the January 21 grievance in his complaint, nor did he attach a copy of it, despite attaching copies of other grievances to demonstrate exhaustion.

Grievance officer Ryan Hughes testified consistent with Plaintiff that the locked grievance box was located in the core area of the housing unit in January of 2023. Though Shawnee has recently implemented mobile grievance boxes that can be circulated when inmates cannot access the primary box, this practice did not exist in 2023. In 2023 housing unit counselors were responsible for collecting grievances, and they typically performed this task Monday-Friday, but not on weekends, holidays, or when they were on leave. The grievance boxes each had a paper log where the individual collecting grievances noted how many grievances were collected. The January 2023 log for the 2 house indicated that three grievances were collected on January 23, 2023. (Hearing Exhibit D, p. 1). On cross-examination, Hughes admitted he had heard of grievances getting lost, though he had no personal experience with it. He testified that per a newer administrative directive, inmates are now required to deposit their own grievances in the locked boxes. Hughes indicated that when a grievance is received in the grievance office it is assigned a tracking number that is catalogued and used to follow the grievance through the process. Hughes also testified that when he reviewed the 2023 logs from Shawnee, he did not find evidence of any grievances filed by Plaintiff.

## CONCLUSIONS OF LAW

### A. Legal Standards

Summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In determining a summary judgment motion, the Court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex*

*Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted). Courts generally cannot resolve factual disputes on a motion for summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014) ("[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted). However, when the motion for summary judgment pertains to a prisoner's failure to exhaust administrative remedies, the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to exhaust. *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008). After hearing evidence, finding facts, and determining credibility, the court must decide whether to allow the claim to proceed or to dismiss it for failure to exhaust. *Wilborn v. Ealey*, 881 F.3d 998, 1004 (7th Cir. 2018).

The Prison Litigation Reform Act (PLRA) provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey*, 544 F.3d at 740. "The exhaustion requirement is an affirmative defense, which the defendants bear the burden of proving." *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011). For a prisoner to properly exhaust his administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Id.* at 1024.

As an inmate in the IDOC, Plaintiff was required to follow the grievance process outlined in the Illinois Administrative Code. 20 ILL. ADMIN. CODE § 504.800, et seq. (2017). Section 504.810(c) requires that a grievance state: "what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint. If the inmate is not satisfied with the CAO's response, he can file an appeal with the IDOC Director through the Administrative Review Board (ARB). 20 ILL. ADMIN. CODE § 504.850(a).

**B. Analysis**

The parties agree that a locked grievance box was available in the corridor of Plaintiff's housing unit. Hughes credibly testified that in 2023 counselors collected grievances on weekdays and recorded what they collected in a log. The January 2023 log for 2 house indicated that 3 grievances were collected on Monday, January 23, 2023. Hughes further credibly testified that once a grievance is collected, it is assigned a tracking number that can be used to follow the progress of the grievance through the process. The Court credits this evidence as sufficient to establish that a grievance process was available and functional at Shawnee. Hughes' review of records from January of 2023 reflected no evidence of any grievances submitted by Plaintiff.

Though Plaintiff testified that he believed he gave his grievance to the 5-day sergeant, he was not entirely certain if this was the person he gave his January 21 grievance to, and he merely assumed that officers would be willing to deposit grievances in the box for inmates. Plaintiff also indicated that he made no effort to follow-up on this grievance, despite later filing and successfully exhausting multiple other grievances

relevant to this lawsuit. This case presents a close call, but ultimately, the Court credits the Defendant's documentary evidence and Hughes' testimony that Plaintiff never filed the January 21, 2023, grievance at Shawnee for processing, over Plaintiff's own contention that his grievance must have gotten lost. Though Plaintiff did not come off as patently lacking credibility at the hearing, he seemed equivocal on how or exactly when he tendered his grievance, and he agreed he never made any effort to follow-up on the grievance assuming he really had filed it and got no response. It seems more likely that Plaintiff simply forgot to file the grievance in the whirlwind events that began at the Friday religious service and culminated just a few days later with his transfer to another prison. Accordingly, the Court will now dismiss Claims 1 and 2 as unexhausted.

## Disposition

**IT IS HEREBY ORDERED THAT** Claims 1 and 2 against Defendant Lambert-Goheen are **DISMISSED without prejudice** because Plaintiff failed to exhaust these claims as required by 42 U.S.C. § 1997e(a). The Clerk of Court shall enter judgment on these claims at the close of this case. This case shall now proceed to merits discovery solely on Claim 3 against Defendant Lambert-Goheen. A scheduling order shall follow.

**IT IS SO ORDERED.**

Dated: September 24, 2026

Judge Dugan

Digitally signed by Judge Dugan
Date: 2026.09.24 14:52:11 -05'00'

DAVID W. DUGAN
United States District Judge